## COLLINS v. LIDDLE et ux.

No. 4369.   Decided June 4, 1926.   (247 P. 476)

1.  AUTOMOBILES—DRIVER ON LEFT IS NOT REQUIRED TO YIELD RIGHT
    OF WAY TO ONE APPROACHING FROM RIGHT UNLESS COLLISION IS
    REASONABLY TO BE APPREHENDED (LAWS 1923 c. 47). Driver on
    left at street intersection is not required under Laws 1923, c. 47,
    to yield right of way to one approaching from right, unless col-
    lision is reasonably to be apprehended.[1]

2.  AUTOMOBILES—INSTRUCTION THAT JURY MUST DETERMINE WHETH-
    ER DEFENDANT WAS NEGLIGENT IN DECIDING SHE COULD CROSS
    SAFELY BEFORE PLAINTIFF'S AUTOMOBILE ARRIVED FROM RIGHT
    HELD PROPER UNDER EVIDENCE. Instruction that jury must con-
    sider all circumstances in determining whether defendant ap-
    proaching street intersection in automobile from left was negli-
    gent in deciding she could cross street before plaintiff's car com-
    ing from right arrived *held* proper, where she had testified that
    there would have been no collision if plaintiff's car had held its
    course.

3.  TRIAL—REFUSAL OF INSTRUCTION THAT DRIVER ON LEFT MUST
    YIELD RIGHT OF WAY IF COLLISION IS REASONABLY TO BE APPRE-
    HENDED HELD PREJUDICIAL ERROR, NOTWITHSTANDING COURT HAD
    INSTRUCTED HE MUST YIELD IT IF COLLISION WAS "IMMINENT";
    "APPREHEND." Refusal of instruction that driver on left at in-
    tersection must yield right of way to driver on right if collision is
    reasonably to be apprehended *held* prejudicial error, notwithstand-
    ing court had instructed he must yield it if collision was imminent,
    since "imminent," meaning perilous, threatening, or full of dan-
    ger, is substantially different from "reasonably apprehended,"
    "apprehend" meaning to be conscious or sensible of.

[Ed. Note.—For other definitions, see Words and Phrases, First
and Second Series, Apprehend—Apprehension; Imminent.]

---

[1] *Bryant* v. *Bingham Stage Line*, 60 Utah, 309, 208 P. 541.

Corpus Juris-Cyc. References:
[1]   Motor Vehicles 28 Cyc. p. 34 n. 94 New.
[2]   Motor Vehicles 28 Cyc. p. 49 n. 47, 49.
[3]   Appeal and Error 4 C. J. p. 1050 n. 85; Apprehend 4 C. J.
p. 1410 n. 19 New; Imminent 31 C. J. p. 251 n. 4, 4 New, 6 New;
Motor Vehicles 28 Cyc. p. 49 n. 49; Trial 38 Cyc. p. 1718 n. 25.
[4]   Trial 38 Cyc. p. 1711 n. 19.
[5]   Motor Vehicles 28 Cyc. p. 49 n. 46, 49.

4. APPEAL AND ERROR. Refusal of requested instruction, substantially covered by another instruction given by court, *held* not error.

5. AUTOMOBILES—REFUSAL OF INSTRUCTION THAT AGE OF DRIVER OF AUTOMOBILE DAMAGED WAS IMMATERIAL HELD PROPER; QUESTION BEING FOR JURY. (LAWS 1921, p. 235, § 3982). In action for damage to automobile driven by child under age of 16 contrary to Laws 1921, p. 235, § 3982, refusal of instruction that age of driver was immaterial *held* proper, since such question was for jury.

Appeal from District Court, Third District, Salt Lake County; *Chris Mathison*, Judge.

Action by C. W. Collins against Arthur J. Liddle and wife. Judgments for defendants, and plaintiff appeals.

REMANDED, with directions.

*G. A. Iverson* and *C. W. Collins*, both of Salt Lake City, for appellant.

*H. L. Mulliner* and *Herbert B. Maw*, both of Salt Lake City, for respondents.

THURMAN, J.

This is an action to recover damages for injury to an automobile which occurred in Salt Lake City, Utah, July 1, 1924. The accident happened at the intersection of First avenue and H street, public streets of said city, at or about 7 o'clock p. m. of the day above mentioned. First avenue runs east and west, and H street runs north and south.

Plaintiff's complaint, in substance, alleges that defendants are husband and wife and owners of a touring automobile registered in the name of defendant Arthur J. Liddle, which was at all times kept and used for the family of defendants; that on or about the date and hour above stated defendant Elizabeth H. Liddle was driving west along said First avenue with members of her family at a high rate of

speed, and plaintiff's automobile was being driven south on H street at a reasonable rate of speed and with due care; that, notwithstanding plaintiff's automobile had the right of way and was in the part of the street where it belonged, said defendant Elizabeth Liddle failed to yield the right of way and negligently failed to stop defendants' automobile, as was her duty and as was required by law, and negligently failed to guide said automobile along the north side of said First avenue where it belonged, but, on the contrary, the said Elizabeth Liddle, heedless of the rights of plaintiff and of where she was going and of the rate of speed at which she was driving, negligently and carelessly and in violation of law and rules of the road continued to drive said automobile forward and turned it to the south side of First avenue, causing it to collide with plaintiff's automobile near the southwest corner of the intersection of said streets, thereby causing the injury and damage of which plaintiff complains and for which he prays judgment.

Defendants deny each and every allegation of plaintiff's complaint, and by way of counterclaim allege negligence on the part of Cornelia Collins, plaintiff's daughter, who was driving plaintiff's automobile, and allege that said negligence caused the collision and consequent injury. Defendants also allege injury to defendants' said automobile and personal injury to defendant Elizabeth Liddle. Defendants plead and rely on certain ordinances of Salt Lake City regulating traffic, and pray judgment for the damages they have sustained.

The jury to whom the case was tried found for the defendants no cause of action. Plaintiff appeals and assigns numerous errors, many of which it will not be necessary to consider, in view of the fact that the court in its instructions to the jury withdrew from their consideration all matters relating to damages sustained by defendants, as alleged in their counterclaim, and in view of the fact that the jury found in favor of both defendants, no cause of action.

If defendant Elizabeth H. Liddle, the driver of defendants'

automobile, was not liable as found by the jury, it follows as a necessary corollary that her husband, under the facts of this case, could not be liable, and, therefore, all matters pertaining to whether or not she was his agent and acting within the scope of her authority are rendered wholly immaterial. For that reason such matters will not be further considered.

The principal errors relied on in the argument are certain instructions to the jury and refusal to instruct as requested by the plaintiff.

While insufficiency of the evidence is not assigned as error, it is necessary to describe in a general way how the accident occurred. Plaintiff's daughter was driving plaintiff's car south on H street and defendant Elizabeth H. Liddle was driving defendants' car west on First avenue on the north side of the street. The evidence is conflicting as to the rate of speed each was driving or at what point on the street each first saw the other. Each of the streets is about 40 feet in width, including curbing which is about 4 inches thick. Plaintiff's daughter who was driving plaintiff's car testified that just before she reached the north line of the intersection, she was driving about 16 miles an hour; that she had slowed down as she approached the intersection; that she looked up and down the avenue and saw defendants' car about twice as far from the intersection as she was, and, having the right of way, turned on gas and turned her car from the middle of H street towards the southwest corner of the intersection. She testified she had been driving on the middle of H street because that had been tarred and graveled, while the sides of the street were uneven; that she was just about out of the intersection when the collision occurred; that she could not tell how fast defendants' car was running when she first saw it, but it "was quite a ways back" when plaintiff's car reached the intersection, and that it must have been running faster than plaintiff's, which was running only 16 miles an hour at that point.

Defendants' car knocked plaintiff's car over the curb and onto the parking at the southwest corner of the intersection.

The driver retained control of the car and ran it back on H street, south of the intersection. The question of damages to defendants' car is immaterial on this appeal.

Elizabeth H. Liddle, defendant and driver of defendants' car, testified she was driving on First avenue from 15 to 17 miles an hour; that as she neared the intersection she looked to the right and then to the left; that she saw plaintiff's car about half way up the block, about 160 feet from the intersection; that she stepped it off the next morning; that her car was about 30 to 40 feet from the intersection; that when she looked to the left she saw another car approaching from the left; that as neither car was close she proceeded on into the intersection; that when she was about in the center of the intersection her daughter, who was with her, said, "Look at that car!" that witness looked and saw she was directly in front of plaintiff's car; that she saw plaintiff's car turn to the right; that she immediately turned her car to the left, applied the brakes, and stopped "like a flash"; that plaintiff's car came alongside of defendants' car and turned it towards the east curb; that from the time witness first saw plaintiff's car it must have run twice as fast as defendants' "because it covered twice the ground." Witness thought plaintiff's car was running about 30 miles an hour.

As to which car ran into the other, the evidence is conflicting. There was much other evidence of a corroborative nature on each side of the case. It is not necessary to refer to it in detail. The testimony as above stated substantially reflects the record as far as concerns the conduct of the parties and the manner and cause of the accident.

Appellant, in the first paragraph of his brief, says: "This is a suit to determine whether or not there is a right of way law in Utah." This is hardly a correct statement of the situation. The statute of the state determines that question. Session Laws of Utah 1923, at page 98, declares as follows:

"An operator of a vehicle shall have the right of way over the operator of another vehicle who is approaching from the left in an intersecting or connecting highway and shall give the right of way

to an operator of a vehicle approaching him from the right at an intersecting or connecting highway."

The above language is so plain and unambiguous as to leave no doubt whatever as to whether "there is a right of way law in Utah." The statute, however, must receive an interpretation compatible with reason, common sense, and practicability. It certainly does not mean that a driver on the left at an intersection must stop and wait for a driver on the right to cross the intersection ahead of him when danger of a collision is not at that time to be reasonably apprehended. If under the circumstances of the case the relative situation of the parties and the speed at which they are driving are such that a collision is reasonably to be apprehended, then, as we understand the law, it is the duty of the driver on the left to yield the right of way to the driver on the right. This interpretation of the meaning of statutes and ordinances, in substance, the same as the Utah statute, finds support among both text-writers and adjudicated cases. An instruction to that effect is quoted with approval in *Bryant* v. *Bingham Stage Line*, 60 Utah, at page 309, 208 P. 541, and is cited by both of the parties in the instant case. See, also, Huddy on Automobiles (6th Ed.) § 262, and *Barnes* v. *Barnett*, 184 Iowa, 936, 169 N. W. 365.

There being no question raised as to the sufficiency of the evidence, the principal questions are, Was the jury properly instructed as to the law, and did the court err in refusing plaintiff's requests? Upon the subject of the right of way, the court instructed the jury as follows:

"No. 5. You are further instructed that the law requires that every driver of an automobile on the public highways of the state shall have the right of way over the driver of another automobile who is approaching from the left in an intersecting highway. The meaning of this rule is that, if both drivers approached the intersection at such time and under such circumstances that, if both continued along their course, a collision would be imminent, it is the duty of the driver approaching from the left to accord the right of way to the driver who is approaching the intersection from his right.

"No. 6. The court instructs you that, while the law gives to the driver of an automobile the right of way over the driver of an automobile approaching from his left at the intersection of public highways, it does not follow, as a matter of law, that, upon the happening of a collision between two vehicles at such an intersection, the driver of the automobile on the left is necessarily guilty of negligence. All the facts and circumstances surrounding the occurrence of the accident must be considered in determining whether such operator was in fact negligent.

"No. 7. You are instructed that the driver of an automobile approaching the intersection of public highways has a right to presume, if he has no knowledge or notice to the contrary, that the driver of an automobile approaching such intersection from his right is conforming to the law in regard to the rate of speed and manner of driving. *Therefore in this case it is not sufficient for the plaintiff to show that the defendant Elizabeth H. Liddle attempted to cross the intersection of H street and First avenue ahead of the automobile driven by his daughter, Cornelia Collins, but you must find, taking into consideration all the surrounding circumstances, that said Elizabeth H. Liddle was negligent in assuming or deciding that she could safely cross said intersection before the plaintiff's car entered the same.*" (Italics supplied.)

There was no exception taken to instructions 5 and 6. Plaintiff, however, excepted to the last sentence of instruction No. 7, commencing with the word "therefore." The language in italics indicates the words to which exception was taken.

The language excepted to, without referring to the evidence, is somewhat out of the ordinary and calculated to excite curiosity as to why such language was used. When, however, we refer to the testimony of Mrs. Liddle, in response to questions asked by the court, the meaning of the language is plain and must have been clear to the mind of the jury. The following questions and answers illustrate the situation:

"By the Court: Q. Mrs. Liddle, you were going west on First avenue? A. Yes. Q. Now, when you first saw the Collins car approaching from the north, you decided to keep going, didn't you? A. Yes, sir. Q. Now in making that decision you assumed something—did you

assume that you had the right of way and that the Collins car would stop, or did you assume that the car was so far away you had time to go through the intersection? A. I assumed they would keep the direction down the center of the road; then there was no danger, had they done that; I would be out of the way."

In view of this testimony, which of course was known and understood by the jury, there is no substantial grounds for criticising the language to which exception was taken.

Appellant also assigns as error the refusal of the court to give the following instruction as requested:

"The court instructs the jury that 'an operator of a vehicle shall have the right of way over the operator of another vehicle who is approaching from the left in an intersecting or connecting highway and shall give the right of way to an operator of a vehicle approaching him from the right at an intersecting or connecting highway." (Laws 1923, p. 98.)

"The court instructs the jury that the right of precedence at a crossing, whether given by law, or established by custom, has no proper application except where the travelers or vehicles on intersecting streets approach the crossing so nearly at the same time at such rates of speed that, if both proceeded, each without regard to the other, a collision or interference between them is reasonably to be apprehended. In such a case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield him that right of way."

The instruction requested is substantially in compliance with the views we have already expressed. It seems to be a reasonably fair statement of the rule that should be adopted where the facts are substantially as in the case at bar. The question therefore is, Does instruction No. 5, as given by the court, in effect cover the ground sought to be covered by appellant's requested instruction?

It is a fundamental rule of practice at least in this jurisdiction, that it is not error to refuse a request substantially covered by another instruction given by the court.

A careful analysis of the requested instruction and the instruction given by the court leads us to the conclusion that

there is a substantial difference in meaning and effect. The question turns upon the meaning of the word "imminent" in the instruction given by the court and the words "reasonably to be apprehended" in the requested instruction. In the instruction given the statutory right of way is withheld from the driver on the right until the conditions are such that, if each driver continued to proceed on his course, a collision would most certainly result, while under the requested instruction, under the same conditions, the right is only withheld until it appears probable that a collision might result. It is possible that we have not reflected with meticulous accuracy the meaning and import of the words in question. That there is a substantial difference in the meaning of the words cannot be successfully denied. "Imminent," in the sense used in the instruction given, means "full of danger; threatening; menacing; perilous." "Apprehend," in the sense used in the instruction requested, means, "to be conscious or sensible of." Another definition: "To think, believe, or be of opinion" (Webster's New International). Nor can it be contended that the distinction we are making is unduly hypercritical, or that it is not a question as to which verbal refinement should be indulged. In view of current history and the daily record of accidents occurring, in violation of traffic regulations, there cannot come before the court a question of graver importance than the very question under review. It involves the proper interpretation of a statute enacted to prevent the destruction of life, limb, and property; and while, as hereinbefore stated, the statute should be given a reasonable construction—one that is consistent with the right of persons to use the public highway with the least possible inconvenience consistent with safety, yet "safety first" was evidently the purpose and intention with which the statute in question was enacted. In the opinion of the writer, the statute contemplates that, whenever there are reasonable grounds to doubt whether it is safe to attempt to cross an intersecting highway in front of a driver on the right, the driver on the left should yield the right of

way. Such rule, if followed, might sometimes result in slight inconvenience. It would undoubtedly interfere with the pleasure of those who are bent on using the congested streets of a city as they would use the highways in an open country where there are but few inhabitants, but it would tend to prevent, as before stated, the destruction of life, limb and property—which was the evident purpose of the law. It is, in effect, conceded by counsel for respondent that the instruction requested by plaintiff was a correct statement of the law. If we understand counsel's views aright, the contention is that the instruction as given and the instruction requested have the same meaning. As already stated, we are not satisfied that such is the case, and in fact are of an opinion entirely different. In Blashfield on Instructions (2d Ed.) vol. 1, § 189, after stating that the court may give a request in its own language, the author, at pages 446-448, says:

"This rule seems to follow as a necessary consequence of the rule already considered, that requests for instructions may be refused without error when substantially covered by other instructions given in the case. While the court may give its own instructions in lieu of those asked, the charge as given must cover all the points of the instruction requested, and the court in modifying the phraseology cannot do so in such a manner as to alter the sense of the charge or change the language so as to render the instruction misleading, or so as to obscure its vital point or essentially weaken its force. Counsel have a right to a clear formulation of every important view of the law, either as they drew it up, or in some equally proper form, and where an instruction as requested properly announces the law, it is better to give it as requested."

The court is of opinion that the instruction requested by appellant is more in harmony with the real intent and purpose of the statute in question than was the instruction given by the court, and that the refusal of the requested instruction was error prejudicial to the substantial rights of the plaintiff.

We have refrained from citing many of the cases referred to by appellant in his brief, for the reason that, while in the

main they approve of a vigorous enforcement of traffic regulations in general, including the one in question here, none of them except the cases already referred to furnish a model compatible with the views we entertain respecting a correct interpretation of the statute.

As the cause must be remanded for a new trial, there is one other question that should be determined. Laws of Utah 1921, p. 235, § 3982, provide:

"No person, whether resident or non-resident of this state, under sixteen years of age, shall operate a vehicle or tractor upon any highway of this state. * * *"

The evidence discloses the fact that Miss Cornelia Collins, daughter of plaintiff and driver of his automobile, was under 16 years of age when the collision occurred. It appears from the record that during the course of the argument to the jury respondent's counsel repeatedly charged plaintiff with violating the statute above quoted by teaching his daughter to run the automobile and enlarged upon the fact that the law had been passed because it was a known fact that minors under 16 years of age were incompetent mentally and physically, to run an automobile. It was contended by appellant at the close of the trial that there was nothing in the evidence to indicate that his daughter's age had anything to do with the collision, and that he was prejudiced by reason of the argument made by respondent's counsel. Plaintiff therefore requested the court to give the following instruction which the court refused:

'The court instructs the jury that the fact that plaintiff's daughter, who was driving plaintiff's automobile, was under 16 years of age, is wholly immaterial in this case. You are to find the facts in this case from the evidence and from those facts and the law as given you in the instructions of the court as applied thereto find your verdict, regardless of the age of either of the drivers of the colliding automobiles."

In support of his contention that the court should have instructed the jury as requested, appellant refers to the fol-

lowing cases: *Page* v. *Mayors,* 191 Cal. 263, 216 P. 31; *White* v. *Kline,* 119 Wash. 45 204 P. 796; *Roos* v. *Loeser,* 41 Cal. App. 782, 183 P. 204; *Shimoda* v. *Bundy,* 24 Cal. App. 675, 142 P. 109; also to Berry on Automobiles (4th Ed.) pp. 203-205.

The authorities above cited merely sustain the proposition that though a driver is driving without authority of law, or against law, still he is not barred from recovering for an injury caused by the negligence of another unless the fact which disqualifies him as a driver is the proximate cause of the injury. The headnote to White v. Kline, supra, is fairly typical of the rule, and reads:

"Though plaintiff was negligent in permitting his son, under 18 years of age, to operate a motor vehicle without obtaining a permit as required by the city ordinance, he may recover for injury to the truck from collision with defendant's motor bus, unless such negligence of the plaintiff was the proximate cause of the injury."

The other authorities referred to being to the same effect, it is unnecessary to review them in detail.

It is fair to the plaintiff to state that it is conclusively established in the instant case that he did not grant permission to his daughter to operate his automobile. For this reason the court in instructing the jury withdrew from their consideration all evidence relating to damage to the defendants as alleged in their counterclaim. In view of the authorities cited by appellant and the doctrine therein announced, the question is, Could the trial court, or can this court, as matter of law, assume that the age of plaintiff's daughter had nothing to do with the accident? The instruction requested assumes that fact, and, unless it can be assumed as matter of law, the court was justified in refusing the request. Why was such law enacted? What was the reason which influenced the lawmaking body? We are irresistibly impelled to the belief that it was because of the known fact that vehicle traffic on the congested highways is continually fraught with more or less danger; that to operate a vehicle safely requires mental discretion and physical ability

to handle and control the vehicle, especially in cases of emergency; that, in the experience of mankind, children under the age mentioned have not such mental discretion or such physical ability and therefore are prohibited as provided in the law. Now, in view of these motives which must have influenced the enactment of the law it would have been going a long way for the trial court to assume that the age of Miss Collins had nothing whatever to do with the accident. The fact that such a law was deemed expedient in the enactment of traffic regulations implies that in the opinion of the lawmakers at least there may arise cases in which the fact that a driver is under the age of 16 years may have something to do with an accident. If not, then to what end was the law enacted? It does seem to the court that, inasmuch as there may be cases in which it becomes material to show that the driver was disqualified by reason of his age, it therefore becomes a question for the jury, under proper instructions given by the court. If the court had been requested to instruct the jury to the effect that the age of Miss Collins was wholly immaterial, unless they found that she, being under the age prescribed, contributed to, or was the proximate cause of, the accident, the instruction would have been more in harmony with the cases relied on by appellant, and we are inclined to believe the trial court would have given such instruction.

Besides all we have said upon this subject, it may be added that it is dangerous to undertake to restrict the effect of counsel's argument, as long as he keeps, within the record of his case. The fact that Miss Collins was under the age prescribed was admitted. The effect of such conditions was a proper subject for argument. If counsel went too far and abused his opportunity, it would have been more regular and more in conformity with good practice to have interposed objections while the argument was being made. Had that been done, the jury, if necessary, would probably have been admonished and an instruction given limiting the scope of the argument.

The cause is remanded to the trial court, with directions to grant a new trial at respondents' cost.

GIDEON, C. J., and FRICK and CHERRY, JJ., concur.

STRAUP, J. I, too, concur, but with respect to the right of way statute I wish to add that, when two operators, one from the left and the other from the right, are approaching and about to enter a street or highway crossing at about the same time, I think it is the duty of the operator from the left to slow down and if necessary stop to let the operator from the right pass. In such case to permit the former to go forward and pass the crossing in advance of the latter, though he may reasonably believe he may do so without imminence or liklihood of collision, tends to mislead the operator from the right and requires him to take care of the conduct of the operator from the left, and in effect destroys the efficacy of the statute and renders its enforcement dependable upon the degree of care or the want of it exercised by the operator from the left; that is, with due care exercised by him the statute is rendered inapplicable, and is rendered applicable only when due care is not exercised by him. As well say one may with due care drive on the wrong side of the street or highway, or in violation of a speed limit, but may not do so carelessly or when a collision is imminent or reasonably to be expected. Thus, under the stated circumstance, the question is not what may or may not be reasonably expected to happen if the operator from the left does not heed the statute and yield the right of way. The requirement of this statute is that he yield it, and not speculate whether by stepping on the gas he may beat it over in advance of the operator from the right without a collision. It is only when the operator from the left is entering it that the latter may continue and pass over it in advance of the former, and when it is apparent that to do so a collision is not likely to occur. But even then the latter must taken the consequences of any misjudgment on his part, unless the former himself is guilty of breaches of negligence contributing thereto.