POTTER et al. v. Dr. W. H. GROVES LATTER-DAY SAINTS HOSPITAL.

No. 6208.   Decided June 18, 1940.   (103 P. 2d 280.)

*Irvine, Skeen, Thurman & Miner* and *Merrill C. Faux,* all of Salt Lake City, for appellant.

*Lewis & Lewis,* of Salt Lake City, for respondents.

WOLFE, Justice.

This is an appeal from a judgment in the amount of $1,000 based on a verdict. Respondents,plaintiffs below, are the surviving husband and children of Mrs. Jennie Brown Potter who died on February 23, 1939, in the hospital of appellant. It is the contention of respondents, sole heirs of deceased, that her death was proximately caused by a fall from her bed which she sustained in appellant's hospital during the early morning hours of February 21, 1939, that appellant's employees were negligent in allowing her to fall from her bed, and that respondents have suffered pecuniary loss by reason of their loss of companionship and services of deceased. At the conclusion of plaintiffs' (respondents') evidence defendant moved for a non-suit which motion was denied, and at the conclusion of all the evidence in the case defendant moved for a directed verdict which motion was also denied. The denial of these motions has been assigned as error. In addition errors have been assigned in (1) the admission of certain evidence (2) refusal to in-

struct the jury as requested, and (3) instructing the jury as was done in certain instructions.

At the time of her entry Mrs. Potter was very restless and nervous and even irrational at times. Sideboards were placed on her bed Thursday night and a special nurse was employed through the supervisor of nurses, by Jennie I. Potter, a daughter, to care for Mrs. Potter during the night. Various members of her family stayed in the room with Mrs. Potter during the daytime. The special nurse attended Mrs. Potter during Thursday, Friday, Saturday, and Sunday nights—February 16, 17, 18 and 19—but sideboards were used on Mrs. Potter's bed only on Thursday night. On Monday, February 20, the supervisor of nurses advised Jennie Potter that Mrs. Potter apparently was rational and was so much quieter that she thought it unnecessary to continue to employ the special nurse, whereupon Jennie Potter authorized the dismissal of the special nurse. The record shows that Mrs. Potter had by Monday become much quieter and less restless than she had been at the time of, and immediately following, her entrance. On Monday night no sideboards were placed on Mrs. Potter's bed and no special nurse was with her.

The uncontradicted testimony of Leona Felix, a student nurse at the hospital, was that at 12 midnight Monday night she visited Mrs. Potter's room to care for a Mrs. Kearney who shared the room with Mrs. Potter. She was in the room for approximately 15 minutes during which time she talked with Mrs. Potter whom she found to be quiet and rational. Miss Felix then proceeded to the adjoining room. Very soon thereafter she heard loud talking coming from Mrs. Potter's room. She hurriedly returned to the room and turned her flashlight on both patients (Mrs. Potter and Mrs. Kearney). She saw Mrs. Potter sitting on the edge of her bed with her legs and feet hanging over the edge apparently preparing to get to the floor. Miss Felix rushed to Mrs. Potter as she dropped from the bed to the floor and caught

her shoulders. Mrs. Potter immediately complained of her hip hurting. She was put to bed with the help of another nurse and a sideboard was placed on the bed next to the wall, not on the side from which Mrs. Potter had left her bed.

A subsequent examination disclosed that Mrs. Potter had a fractured femur. On February 23 (Wednesday) she died of pneumonia.

Appellant contends (1) that a causal connection between the fall with the resulting fractured femur, and the pneumonia which caused death has not been shown; (2) that no negligence on the part of the hospital has been shown; (3) that no pecuniary loss to respondents has been shown; and (4) that appellant, a charitable institution, is not liable for injuries to charity patients caused by the negligent acts of its employees.

The lower court should have granted defendant's motion for a directed verdict because the evidence in the record failed to show negligence on the part of the hospital which resulted in the fall from which Mrs. Potter ■ sustained a fractured hip. Plaintiffs' case runs thus: Sideboards were placed on Mrs. Potter's bed the first night she was in the hospital; none was on her bed the night of the fall, therefore the hospital was negligent in not placing sideboards on her bed on Monday night and that negligent omission resulted in her fall and injury.

Respondents contend that Mrs. Potter's condition, was such on Monday night that the hospital attendants should have known that she might become irrational at any moment or that she might be expected to try to get from her bed. But the uncontradicted testimony of Miss Felix is that 5 minutes before the fall Mrs. Potter was conscious and resting quietly.

The record shows that she had been quiet during the daytime of Monday and we find no evidence from which the hospital could or should have inferred that Mrs. Potter on

the night of February 20-21 would conduct herself differently from other patients who were "resting quietly." Surely a hospital is not bound to place sideboards on the bed of every patient. A nurse supervisor engaged in daily hospital care of all manner of patients and with several years of such experience, testified that in her opinion there is no need for the use of sideboards when a patient is in the condition of Mrs. Potter on Monday. Therefore, even under the view that Mrs. Potter involuntarily rolled from her bed, respondents failed to prove negligence on the part of appellant.

But appellant's defense is even stronger. Even if it be conceded that sideboards would have prevented Mrs. Potter from involuntarily rolling from her bed, in the record is positive and uncontradicted testimony that she (Mrs. Potter) was making a conscious and voluntary effort to get from her bed when she "fell." Miss Felix had found her to be rational and quiet 5 minutes before ,and at the very time of her "fall" Mrs. Potter was talking with Mrs. Kearney and was getting from her bed over Mrs. Kearney's protest. Mrs. Potter did not "fall" in the sense that she involuntarily rolled from her bed; she was consciously trying to leave her bed to "go to the bathroom." The conclusion seems inescapable that Mrs. Potter's "fall" and injury resulted from her own voluntary and conscious action, and not from any negligent act or omission to act by appellant. Moreover, there was testimony that the use of sideboards for conscious patients is often bad therapy; that conscious patients can, and often do, crawl over sideboards in which event any resulting fall occurs from a greater height and hence is likely to have more serious consequences. There is nothing to show that in not attaching sideboards to Mrs. Potter's bed appellant was not exercising due care prior to and at the time of her injury.

Some negligent act or failure to act by the hospital or its servants must be alleged and proved. Plaintiffs (respond-

ents) did not establish that a standard of due care required the hospital to place sideboards on the beds of patients in the condition of Mrs. Potter on Monday night, therefore, its failure to place sideboards on Mrs. Potter's bed that night was not negligence.

Respondents point out that a sideboard was placed on Mrs. Potter's bed after her fall and from this infers that due care required the hospital to put on sideboards before the fall. But after the fall the hospital was confronted with a different situation. Mrs. Potter was then very restless and in pain. Her condition had changed and a different standard of due care may then have been required. Evidence of alterations or repairs to premises under his control made following an accident therein is inadmissible to show as against a defendant that the former condition was unsafe or was being negligently maintained. Shearman & Redfield on Negligence, Sixth Ed., Vol. I, Sec. 60, pp. 142, 143, and cases cited.

Having decided that no negligence by defendant was shown and that the trial court should, therefore, have directed a verdict for defendant, we have made it unnecessary to discus other points raised on this appeal.

Judgment reversed. Costs to appellant.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.